IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| VERA JONES,<br><br> Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of Social Security,**<br><br> Defendant. | Civil Action No.: 6:14-CV-0321-RDP |

### MEMORANDUM OF DECISION

Plaintiff Vera Jones brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be remanded.

**I. Proceedings Below**

This action arises from Plaintiff's application for disability and DIB dated October 18, 2011. (Tr. 125, 140). Plaintiff alleged disability beginning on May 1, 2010. (Tr. 17, 140). The Social Security Administration initially denied Plaintiff's application on February 1, 2012. (Tr. 80). Plaintiff subsequently requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 68). The hearing was held on June 8, 2012, in Florence, Alabama. (Tr. 30). Plaintiff appeared in Florence, Alabama, and was accompanied by her attorney. (*Id.*). Also present at the hearing was a Vocational Expert ("VE"). (*Id.*). In his decision dated July 5, 2012, the ALJ determined Plaintiff is not disabled under sections 216(i) and 223(d) of the Act. (Tr.

26).  Plaintiff requested review of the ALJ's decision.  The Appeals Council denied Plaintiff's request, thereby making the ALJ's determination the final decision of the Commissioner, and a proper subject of this court's appellate review.  (Tr. 1).

At the time of the hearing, Plaintiff was fifty-two years old.  (Tr. 38).  Her highest level of education consisted of completing the eleventh grade.  (Tr. 41, 46). Plaintiff's work experience includes working at a manufacturing company as a laborer, employment with another entity building furniture, and serving as a cashier and cook at a fast food business.  (Tr. 38-39, 168-71). Plaintiff alleges disability beginning on May 28, 2010 due to anxiety, acid reflux, back pain, hip pain, stomach problems, and a hernia.  (Tr. 144).  Plaintiff's last day of work was in May 2010 when the manufacturing company she was employed by went out of business and she was laid off.  (Tr. 38-39).  Plaintiff subsequently filed for unemployment and drew benefits through December 2011.  (Tr. 48-49).

In her application for disability benefits, Plaintiff noted that her daily activities include preparing coffee, meals, house cleaning, feeding her dog, and sitting.  (Tr. 176-83).  She further noted that most of her meal preparation activities are centered on making a bowl of cereal, making sandwiches, and using a microwave to prepare frozen dinners.  (Tr. 176-80).  Plaintiff's housework includes washing dishes and doing small loads of laundry; she claims that she does other light cleaning but it is time consuming, taking her one to two hours to complete.  (Tr. 180). Plaintiff is unable to do yard work, but is capable of using money, shopping, and driving a vehicle. (Tr. 179-80).  Plaintiff's hobbies include reading and watching television.  (Tr. 180). Additionally, Plaintiff smokes approximately a fourth of a pack of cigarettes each day.  (Tr. 38).

When discussing her pain with the ALJ, Plaintiff rated her pain on an average day between seven and nine on a ten-point scale.  (Tr. 43). When asked about her daily activities,

Plaintiff stated she primarily uses a microwave to prepare meals, sleeps on the sofa because it is closer to the floor (and therefore making it easier for her to pull herself up), and avoids picking up anything heavy. (*Id.*).

The record contains Plaintiff's past medical history from September 2009 to February 2012. (Tr. 147, 201, 285). In September 2009, Dr. Luis R. Davila assessed Plaintiff for upper gastrointestinal and lower gastrointestinal symptoms. (Tr. 207). Dr. Davila recommended that Plaintiff undergo an upper endoscopy and colonoscopy. (Tr. 208). That procedure resulted in an impression of gastroescophegeal reflux disease grade A, hiatal hernia, gastritis, non-ulcerdyspepsia, three colon polyps, and internal and external hemorrhoids. (Tr. 210).

In February 2010, Plaintiff received a mammogram screening which resulted in benign findings. (Tr. 213). In April and May 2010, Plaintiff was evaluated by Dr. V. Ramesh Reddy for complaints of indigestion. Dr. Reddy assessed Plaintiff with hyperlipidemia, gastroesophageal reflux disease, and anxiety/depression. (Tr. 221-22). In October 2011, Plaintiff was examined for chronic lower back pain by a physician with Prestige Family Medicine. (Tr. 226). An x-ray was ordered, and Plaintiff was directed to continue her daily use of Omeprazole for her GERD. (Tr. 226).

In December 2011, Plaintiff received a comprehensive psychological evaluation by Dr. H. J. Gragg. (Tr. 229-31). Dr. Gragg's diagnostic impression was that Plaintiff was experiencing some depressive mood and anxiety. (Tr. 230). Dr. Gragg assessed that Plaintiff's condition could be controlled with medications and that her conditions do not appear to rise to a level that would impede her employment. (Tr. 230-31).

In January 2012, Dr. Boyde J. Harrison assessed Plaintiff for a disability medical examination, which resulted in an impression of functional low back pain, mild scoliosis, and

decreased vision in her right eye to distance. (Tr. 235). Dr. Harrison stated in his opinion that Plaintiff "can perform work related activities." *(Id.).*

Plaintiff's attorney amended her records in the case before the ALJ by submitting additional evidence on June 5, 2012. (Tr. 240). These records include Plaintiff's academic records, a psychological evaluation completed by Dr. Alan D. Blotcky, medical records from Northwest Alabama Mental Health Center, and medical records from Prestige Family Medicine. (Tr. 240-85).

Plaintiff's academic records begin in 1966 and end in 1976. (Tr. 240). The majority of her grades consist of "D" and "F" letter grades. (Tr. 241-85). Plaintiff's only high school letter grades of either a "B" or "C" as a semester average occurred in her ninth grade academic year; all other high school semester letter grades were in the "D" and "F" range. (Tr. 241-47).

Plaintiff was referred by her attorney to Dr. Blotcky on February 22, 2012 for psychological testing. (Tr. 261). Dr. Blotcky administered the WAIS-IV to Plaintiff, which resulted in a Full Scale IQ of 65, placing her in the mildly retarded range. (Tr. 261-63). Plaintiff was referred to and seen by a therapist from Northwest Alabama Mental Health Center on March 7, 2012, where she was recommended to receive outpatient services. (Tr. 266-73).

Plaintiff was seen for a follow-up visit for hyperlipidemia by Dr. Candice T. Hagler on March 30, 2012. (Tr. 276). Plaintiff was assessed as having hyperlipidemia, low back pain syndrome, GERD, and anxiety. (*Id.*).

During the hearing, the ALJ asked the VE a hypothetical question. (Tr. 51). The ALJ directed the VE to assume a hypothetical individual of the age, education, prior work history, and training the same as Plaintiff who could stand, walk, and sit for approximately six hours in an eight-hour workday with all normal breaks; has difficulty reading and writing, but is capable of

signing a name; occasionally lifts twenty pounds and frequently ten pounds; is capable of understanding, remembering, and carrying out instructions adequately in the types of work Plaintiff has performed in the past; can handle stress to perform gainful employment; has a vision problem in the distance, with decreased vision in the right eye to distance, but normal near vision; and could never work from unprotected heights, or on ladders, scaffolds, or ropes. (Tr. 51-53). The ALJ then asked if, with these specific conditions, could such a person perform Plaintiff's past relevant work. (Tr. 53). The VE stated that Plaintiff could perform past relevant work as a cashier/fast food worker and could perform other jobs in the region or nation as a wire worker, garment steamer, and sub-assembler. *Id*.

The ALJ concluded that Plaintiff was not under a disability within the meaning of the Act from May 28, 2010 through July 5, 2012.

## II.     The ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id*.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff meets the insured status requirements of the Act through July 5, 2012, and has not engaged in substantial gainful activity since her alleged onset date of disability. (Tr. 19). The ALJ further determined that Plaintiff has the severe impairment of degenerative disc disease; however, Plaintiff's does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in the listings. (Tr. 19-20). The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (*Id*.). But, he further determined that even considering the combined effects of Plaintiff's impairments

with resulting limitations, she retains the ability to perform a light level of work activity, with the limitations previously noted. (Tr. 25). The ALJ found that Plaintiff is capable of performing past relevant work as a cashier/checker and is not disabled under sections 216(i) and 223(d) of the Act. (Tr. 25, 29).

### III.     Plaintiff's Argument for Reversal

Plaintiff argues that substantial evidence does not support the ALJ's decision that she is not disabled under the Act. (Pl's Mem. 15).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See*

*Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is due to be remanded. The ALJ erred when he failed to articulate why he gave no weight to the assessment of Dr. Blotcky that Plaintiff's IQ is 65, placing her in the mildly retarded range. And, because this error occurred during a necessary step in the process of determining whether Plaintiff is disabled, and as it would be inappropriate for the court to engage in appellate fact finding, the court addresses only this single argument by Plaintiff below.

### A. The ALJ's Decision is Not Based on Substantial Evidence

Plaintiff argues that the ALJ erred by giving the opinion of Dr. Blotcky, which included his assessment of Plaintiff's IQ as mildly retarded with a score 65, no weight. (Pl's Mem. 15). The ALJ did not accept Dr. Blotcky's score of Plaintiff's IQ because he concluded (1) it was inconsistent with the level of function required for the ability she would be required to have in order to perform her past work activity, and (2) her lack of placement in any special education classes. (Tr. 24). The court concludes this was error.

The Government defends the ALJ's determination by citing *Popp v. Heckler*, an Eleventh Circuit opinion which upheld a finding that IQ testing results were not credible because the scores were in conflict with Plaintiff's past work activity and education. 779 F.2d 1497 (11th Cir. 1986). However, the facts in *Popp* are vastly different from those presented here. In *Popp*, the claimant's previous work activity was that of a high school algebra teacher and his past education included an Associate's degree. *See Popp*, 779 F.2d at 1499-1500. Here, Plaintiff's

past work activity includes that of a furniture assembler at a manufacturing company and fast food worker. (Tr. 145). This work experience is far removed from that of an algebra teacher. (Tr. 145). Moreover, Plaintiff's past education is that of a student who only completed the eleventh grade in high school, during which she made nothing but "D" and "F" semester letter grades, with the exception of receiving "B" and "C" grades in her ninth grade year.

Actually, this case is much more similar to *Williams v. Astrue*, where the court had little difficulty concluding the record failed to support the ALJ's finding that the claimant did not meet Listing 12.05C. 692 F.Supp.2d 1331 (N.D. Fla. 2010). In *Williams*, the claimant previously worked at a childcare facility and had the education level of a GED. *Id*. at 1339. The ALJ's decision in *Williams*, also cited *Popp*, but distinguished it, stating that the facts in *Popp* were "a far cry" from the case before it. *Id.* at 1342. The same is true here.

Additionally, in this case, the ALJ relied heavily on the examination of Dr. Gragg in contrast to Dr. Blotcky. (Tr. 24). However, Dr. Gragg did not perform an IQ test. (Tr. 229-31). In *Berryman v. Massanari*, the court stated, "if the ALJ was in doubt as to the validity of the claimant's IQ scores, he should have sought clarification of the test results from [the doctor who performed the test] or ordered additional testing." 170 F.Supp.2d 1180, 1185 (N.D. Ala. 2001). *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Here, even if the ALJ doubted Dr. Blotcky's test results, he never stated any valid basis for ignoring them. (Tr. 24). In such a case, at a minimum, the ALJ should have ordered other testing. For these reasons, the court concludes that the ALJ erred by not properly addressing Plaintiff's IQ score. (Tr. 24).

## VI.   Conclusion

After carefully reviewing the record, this court finds that the ALJ erred by rejecting Plaintiff's IQ score without articulating a valid basis, and that substantial evidence does not exist

to support the ALJ's determination that Plaintiff is not disabled. Therefore, this case should be remanded for further testing of Plaintiff's IQ and further proceedings consistent with this opinion.  A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this March 30, 2015.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE